UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

```
*******************************
James M. Wing,                *
                              *
        Plaintiff             *           COMPLAINT
                              *           Jury Trial Requested
v.                            *
                              *
Clear Align, LLC,             *
                              *
        Defendant             *
                              *
*******************************
```

NOW COMES the plaintiff James M. Wing, by and through his attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

**I.      Parties**

1.      The plaintiff James M. Wing resides at 3 West Hollis Road, Hollis, New Hampshire.  The defendant employed Mr. Wing from approximately February 12, 2018, through July 31, 2020.

2.      The defendant Clear Align, LLC, is a Delaware limited liability company with a principal place of business located at 2550 Boulevard of Generals Suite 280, Norristown, Pennsylvania.  The defendant maintains an office at 24 Simon Street in Nashua, New Hampshire, where Mr. Wing worked.

**II.     Jurisdiction and Venue**

3.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.  The Court may exercise supplemental jurisdiction over the plaintiff's State law claims.

4.      Venue is proper because a substantial part of the events and omissions giving rise to this action occurred within this judicial district.

1

**III.     Facts**

5.      Mr. Wing is a veteran of the optical components industry. In or around the fall of 2017, the defendant began recruiting him to come to work for the defendant as a Diamond Turning Manager.

6.      The defendant made Mr. Wing an offer of employment in a January 12, 2018, letter. Exhibit A.

7.      Mr. Wing accepted the defendant's offer, giving up his employment as the Manager of Optics at another entity in order to do so.

8.      The January 12, 2018, letter promised Mr. Wing not only salary and benefits but an ownership interest in the company. The defendant's Chief Executive Officer, Angelique X. Irvin, stated in the letter, "I would like to issue employee option shares in the company equivalent to 1.97% conditional on approval by the board of directors." Id.

9.      The defendant's promise of an ownership interest induced Mr. Wing to accept the offer of employment.

10.     Mr. Wing excelled in his work for the defendant to such an extent that the defendant promoted him from Diamond Turning Manager to Vice President of Optical Components in his first year of employment. "Due to Jim's efforts, his department delivered all the optical components needed to increase revenue from $12.7M to $33.5M from 2017 to 2018," General Manager Scott R. Payette wrote in a performance review. Exhibit B.

11.     As Mr. Wing's performance review notes, however, the defendant never issued him the promised shares in the company. "Jim's offer letter clearly states he was promised option shares representing 1.97% of the company," the review states, but "[h]e has yet to receive those options from the CEO." Id.

12. Indeed, the defendant's Board of Directors was never even asked to approve the issuance of employee option shares to Mr. Wing, notwithstanding the promise made in the January 12, 2018, letter.

13. The defendant's CEO, Ms. Irvin, subjected Mr. Wing to unwelcome sexual conduct.

14. Throughout 2018 and into 2019, CEO Irvin would hug Mr. Wing when she visited the Nashua office where he worked. In addition, CEO Irvin would single Mr. Wing out to accompany her to offsite meals. CEO would touch Mr. Wing frequently during these offsite meals, rubbing his arms and hands.

15. CEO Irvin would address Mr. Wing as "Mr. Wonderful" and "Love."

16. Mr. Wing reported to General Manager Payette that he found CEO Irvin's behavior towards him "scary" and that it made him uncomfortable. To Mr. Wing's knowledge, this report did not result in the defendant taking any remedial action.

17. CEO Irvin took Mr. Wing to lunch when she visited the Nashua office on or about January 29, 2019. She touched him frequently during the lunch, telling him that he needed attention to "help" him.

18. In or around April of 2019, CEO Irvin visited the Nashua office. She approached Mr. Wing as he stood in a group, rubbed his beard, and exclaimed, "Wow, I like the goatee and short gray hair. You look so hot!"

19. General Manager Payette witnessed the incident, and Mr. Wing again complained to him. General Manager Payette replied only that CEO Irvin was "unbelievable" and that Mr. Wing should try to avoid her.

20.     On or about April 8, 2019, CEO Irvin telephoned Mr. Wing, telling him that she was lying in bed naked and that her sheets were "really comfortable."

21.     On or about April 18, 2019, Ms. Irvin telephoned Mr. Wing again.  In the conversation, CEO Irvin interspersed work-related discussion with comments that she was lying naked in bed.

22.     Mr. Wing submitted a letter to CEO Irvin dated April 22, 2019, in which he stated, "I am writing to express my extreme distress at your ongoing sexual aggression towards me." Exhibit C.  Mr. Wing demanded that CEO Irvin "[c]ease all touching of me, including demands for hugs, and all verbal and nonverbal sexual innuendos and advances directed at me."  Id.

23.     Mr. Wing further complained in his April 22, 2019, letter about the defendant's delay in issuing him the equity interest in the company promised him.  Id.  "I believe that your delay is a component of your sexual conquest effort," Mr. Wing wrote.  Id.  Mr. Wing believed that CEO Irvin "was using the carrot of equity to induce [him] into initiating a physical relationship with her," as Mr. Wing stated in the Charge of Discrimination he would ultimately file with the New Hampshire Commission for Human Rights.  Exhibit D.

24.     CEO Irvin responded to Mr. Wing's letter by correspondence dated April 25, 2019. Exhibit E.  CEO Irvin omitted to address Mr. Wing's sexual harassment allegations in her response, but she acknowledged the defendant's delay in issuing the employee option shares.  "I also realize the employee stock documentation has taken way too long and this may have led you to believe the worst," CEO Irvin wrote.  Id.

25.     On or about May 9, 2019, Mr. Wing advised CEO Irvin that he intended to grieve his sexual harassment to the New Hampshire Commission for Human Rights, given that the defendant appeared not to be taking appropriate remedial action.

26. The defendant proceeded to diminish Mr. Wing's employment responsibilities and otherwise subject him to adverse employment actions. The defendant reassigned to another employee responsibility to run the morning meeting of Mr. Wing's operations team. The defendant mendaciously accused Mr. Wing of refusing employment tasks.

27. Mr. Wing filed a Charge of Discrimination with the New Hampshire Commission for Human Rights (Human Rights Commission) on or about July 30, 2019. Exhibit D. The Charge was dually filed with the United States Equal Employment Opportunity Commission (EEOC).

28. Mr. Wing notified the Human Rights Commission of his intent to pursue a civil action in March of 2020, causing the Human Rights Commission to close its investigation.

29. Mr. Wing requested from the EEOC, and received on or about September 1, 2020, a Notice of Right to Sue. Exhibit F. This lawsuit is filed within 90 days of Mr. Wing's receipt of the Notice of Right to Sue, as required.

30. Mr. Wing voluntarily terminated employment with the defendant in July of 2020, driven by the realization that the defendant would never voluntarily issue him the equity interest that had induced him to give up his former employment and become the defendant's employee.

## COUNT I

### (Breach of Contract)

31. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

32. The defendant offered Mr. Wing an equity interest in the defendant, subject to approval of the defendant's Board of Directors.

33. Mr. Wing accepted the defendant's offer.

34. The defendant's offer, and Mr. Wing's acceptance of it, resulted in a benefit to the promisor and a detriment to Mr. Wing as the promise. The defendant obtained the benefit of Mr. Wing's services. Mr. Wing incurred detriment because he gave up his prior employment in order to accept the defendant's offer.

35. The defendant breached its contractual obligations to Mr. Wing, failing to issue him the promised employee option shares and failing even to seek approval from the Board of Directors to do so.

36. As a direct and proximate result of the defendant's breach of contract, Mr. Wing has suffered damages equal to the value of his promised employee option shares. Mr. Wing also is entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the defendant's conduct. Mr. Wing has further incurred attorney's fees and expenses because he has had to litigate to obtain shares to which he has a clearly established right.

## COUNT II

### (Promissory Estoppel)

37. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

38. The defendant made a promise to Mr. Wing to issue him employee option shares subject to Board of Directors approval, which promise the defendant reasonably should have expected would lead Mr. Wing to resign his former employment and accept employment with the defendant.

39. In reliance on the defendant's promises, Mr. Wing resigned his former employment and accepted employment with the defendant.

40. The defendant breached its promise, to Mr. Wing's detriment.

41. As a direct and proximate result of Mr. Wing's detrimental reliance on the defendant's promises, Mr. Wing has suffered damages equal to the value of his promised employee option shares. Mr. Wing is also entitled to enhanced compensatory damages based on the wanton, malicious and oppressive nature of the defendant's conduct. Mr. Wing has further incurred attorney's fees and expenses because he has had to litigate to obtain shares to which he has a clearly established right.

## COUNT III

### (Sexual Harassment in Violation of Title VII)

42. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

43. Mr. Wing is male and therefore a member of a protected category.

44. Mr. Wing was subject to sexual harassment by the defendant's CEO that was unwelcome, severe, and pervasive, involving sexual comments and innuendo, as well as physical touching.

45. The sexual harassment was objectively and subjectively offensive so as to alter the terms and conditions of Mr. Wing's employment.

46. Mr. Wing reported the sexual harassment on at least two (2) occasions to the defendant's General Manager, but the defendant failed to take any appropriate remedial action in response to Mr. Wing's reports.

47. Mr. Wing further grieved the sexual harassment to the CEO, resulting in tangible employment actions, including but not limited to removal of certain employment responsibilities from him, and loss of the employee option shares promised to him.

48. The defendant bears liability for the sexual harassment Mr. Wing endured because a supervisor committed it, the harassment resulted in tangible employment actions, and the defendant failed to take appropriate actions to prevent or correct the harassment.

49. As a direct and proximate result of the sexual harassment, Mr. Wing has suffered and continues to suffer damages, including but not limited to lost equity interest in the defendant, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Mr. Wing is further entitled to punitive damages based on the defendant's malice and reckless indifference to his federally protected rights. In addition, Mr. Wing is entitled to reasonable attorney's fees and expenses.

## COUNT IV

### (Sexual Harassment in Violation of RSA 354-A)

50. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

51. Mr. Wing is male and therefore a member of a protected category.

52. Mr. Wing was subject to sexual harassment by the defendant's CEO that was unwelcome, severe, and pervasive, involving sexual comments and innuendo, as well as physical touching.

53. The sexual harassment was objectively and subjectively offensive so as to alter the terms and conditions of Mr. Wing's employment.

54. Mr. Wing reported the sexual harassment on at least two (2) occasions to the defendant's General Manager, but the defendant failed to take any appropriate remedial action in response to Mr. Wing's reports.

55. Mr. Wing further grieved the sexual harassment to the CEO, resulting in tangible employment actions, including but not limited to removal of certain employment responsibilities from him, and loss of the employee option shares promised to him.

56. The defendant bears liability for the sexual harassment Mr. Wing endured because a supervisor committed it, the harassment resulted in tangible employment actions, and the defendant failed to take appropriate actions to prevent or correct the harassment.

57. As a direct and proximate result of the sexual harassment, Mr. Wing has suffered and continues to suffer damages, including but not limited to lost equity interest in the defendant, emotional distress, humiliation, inconvenience and loss of enjoyment of life. Mr. Wing is further entitled to enhanced compensatory damages based on the defendant's willful and reckless disregard of his rights under RSA 354-A. In addition, Mr. Wing is entitled to reasonable attorney's fees and expenses.

## COUNT V

### (Retaliation in Violation of Title VII)

58. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

59. Mr. Wing engaged in protected activity under Title VII, reporting sexual harassment.

60. Mr. Wing suffered adverse employment actions causally related to his protected activity, including but not limited to lost equity interest in the defendant and loss of job responsibilities.

61. As a direct and proximate result of the defendant's retaliation, Mr. Wing has suffered and continues to suffer damages, including but not limited to lost equity interest in the

defendant, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  Mr. Wing is further entitled to punitive damages based on the defendant's malice and reckless indifference to his federally protected rights.  In addition, Mr. Wing is entitled to reasonable attorney's fees and expenses.

## COUNT VI

### (Retaliation in Violation of RSA 354-A)

62. The allegations of the preceding paragraphs are realleged and incorporated herein by reference.

63. Mr. Wing engaged in protected activity under RSA 354-A, reporting sexual harassment.

64. Mr. Wing suffered adverse employment actions causally related to his protected activity, including but not limited to lost equity interest in the defendant and loss of job responsibilities.

65. As a direct and proximate result of the defendant's retaliation, Mr. Wing has suffered and continues to suffer damages, including but not limited to lost equity interest in the defendant, emotional distress, humiliation, inconvenience and loss of enjoyment of life.  Mr. Wing is further entitled to enhanced compensatory damages based on the defendant's willful and reckless disregard for his rights protected under RSA 354-A.  In addition, Mr. Wing is entitled to reasonable attorney's fees and expenses.

WHEREFORE, the plaintiff James M. Wing respectfully prays this Honorable Court:

A. Schedule this matter for trial, and after trial;

B. Find the defendant liable for breach of contract;

C. Find the defendant liable for promissory estoppel;

D. Find the defendant liable for sexual harassment in violation of Title VII;

E. Find the defendant liable for sexual harassment in violation of RSA 354-A;

F. Find the defendant liable for retaliation in violation of Title VII;

G. Find the defendant liable for retaliation in violation of RSA 354-A;

H. Award the plaintiff damages equal to the value of the equity interest in the defendant promised him;

I. Award the plaintiff compensatory damages relative to his sexual harassment and retaliation claims;

J. Award the plaintiff punitive damages;

K. Award the plaintiff enhanced compensatory damages;

L. Award the plaintiff his reasonable attorney's fees;

M. Award the plaintiff interest and costs; and

N. Grant such other and further relief as is just and equitable.

                                                RESPECTFULLY SUBMITTED:

                                                JAMES M. WING
By his attorneys,
DOUGLAS, LEONARD & GARVEY, P.C.

Dated: November 25, 2020         By:   /s/ Benjamin T. King
Benjamin T. King, NH Bar #12888
14 South Street, Suite 5
Concord, NH 03301
(603) 224-1988
benjamin@nhlawoffice.com