UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

James Wing,
        Plaintiff

        v.                                    Case No. 20-cv-1143-SM
                                              Opinion No. 2021 DNH 126

Clear Align, LLC,
        Defendant


**O R D E R**


James Wing brings this action against his former employer,
Clear Align, seeking damages for, among other things, breach of
contract.  Specifically, Wing claims that as an element of his
compensation, Clear Align promised to give him "employee option
shares in the company equivalent to 1.97%," conditioned upon
board approval.  But, says Wing, Clear Align never issued those
option shares.  Additionally, Wing alleges that during the
course of his employment, he was subjected to sexual harassment
(and then retaliation) by Clear Align's CEO, Angelique Irvin, in
violation of both New Hampshire and federal law.


Invoking the choice of law and forum selection clause in
Wing's employment contract, Clear Align moves to dismiss the
complaint or, in the alternative, transfer this proceeding to

the United States District Court for the Eastern District of
Pennsylvania.  For the reasons discussed, that motion is granted
to the extent defendant seeks a change of venue.  <u>See generally</u>
28 U.S.C. § 1404(a).


**Background**

According to Wing's complaint, and based upon the
undisputed documents of record, the relevant facts are as
follows.  Wing has been a well-respected member of the optical
components industry for several years.  In the fall of 2017,
Clear Align began recruiting him to work for it as a "Diamond
Turning Manager."  On January 12, 2018, Clear Align presented
Wing with a written offer of employment, the relevant portions
of which provide:

> As a regular employee, you will be eligible for the
> applicable Clear Align medical, vision, dental, short
> term and long term disability benefits which are paid
> in part by Clear Align.  You may join the Clear Align
> benefits plan the first day of the month after joining
> our team full time.  <u>You will be required to sign an
> employee acknowledgment form and a nondisclosure
> agreement</u>.
>
> <u>The purpose of this letter is only to confirm our
> discussion regarding your compensation and is not an
> employment contract</u>.  Clear Align is an at-will
> employer, and neither you nor Clear Align is bound to
> continue the employment relationship if either
> chooses, at its will, to end the relationship at any
> time.

> James, we are personally committed to your success at
> Clear Align and we are truly excited about you joining
> our team.  To that end, <u>I would like to issue employee
> option shares in the company equivalent to 1.97%</u>
> conditional on approval by the board of directors.

Offer Letter dated January 12, 2018 (document no. 1-1) (emphasis

supplied).


A month later, on his first day of work at Clear Align,

Wing signed the employment agreement referenced in his Offer

Letter.  At this juncture, two provisions of that agreement are

relevant:

> **3.  Salary.**
> As compensation for services to be rendered to the
> Employer and in consideration for the covenants and
> agreements of the Employee contained herein, the
> Employer shall pay to the Employee an annual
> compensation <u>per the offer letter dated 2/12/2018</u>.[1]
>
>                        * * *
>
> **9.  Governing Law; Jurisdiction.**
> This Agreement shall be governed by and construed and
> enforced in accordance with the laws of the State of
> Pennsylvania without regard to its conflict of law
> rules.  Employer and Employee submit and consent to
> the <u>exclusive jurisdiction</u> of the state and federal
> courts located in the State of Pennsylvania, Counties
> of Philadelphia or Delaware or Montgomery or Chester

---

[1]    This date was hand-written and inserted on a blank line in
the form agreement.  It appears to be a typographical error and
should reference the Offer Letter dated <u>January</u> 12, 2018, which
discusses Wing's annual salary.  There is no suggestion that
Wing ever received a supplemental offer letter that was dated
<u>February</u> 12, 2018 (his first day of work).

<u>with respect to any legal actions between them</u>
<u>relating to this Agreement</u>.

Employment Agreement (document no. 10-2), §§ 3, 9 (emphasis
supplied).

### Governing Legal Standard

This court has previously discussed the analysis employed
when a party invokes a contractual forum selection clause in
support of a motion to dismiss or change venue.  <u>See, e.g.</u>,
<u>Coronovirus Reporter v. Apple, Inc.</u>, No. 21-cv-047-LM, 2021 WL
1946428 (D.N.H. May 14, 2021); <u>Expedition Leather LLC v. FC</u>
<u>Organizational Prod. LLC</u>, No. 11-CV-588-JL, 2013 WL 160373
(D.N.H. Jan. 15, 2013).  That discussion need not be repeated,
but the salient points are as follows.

As a preliminary matter, "[w]here the applicability of a
forum selection clause turns on disputed factual issues, 'the
district court may weigh evidence, assess credibility, and make
findings of fact that are dispositive.'"  <u>Expedition Leather</u>,
No. 11-CV-588-JL, 2013 WL 160373, at *1 (quoting <u>Murphy v.</u>
<u>Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1139–40 (9th Cir. 2004)).
Next, in determining whether a forum selection clause is
enforceable and applicable to the litigation at hand, the court

considers several factors, including (1) whether the parties
entered into a valid contract of which the forum selection
clause was a part; (2) whether the forum selection clause is
mandatory or permissive; and (3) whether the clause actually
governs the claims asserted in the lawsuit.  See Id. at *1.
Here, as the party invoking the forum selection clause, Clear
Align bears the burden of demonstrating that it is a part of an
enforceable contract between the parties, that it is mandatory
in nature, and that it applies to the claims advanced in Wing's
complaint.

    If Clear Align carries that burden, Wing must then assume a
burden of his own.  Typically, when a party seeks to change
venue under 28 U.S.C. § 1404(a), "the moving party bears the
burden to establish that various private-interest and public-
interest factors collectively outweigh the deference due to the
plaintiff's choice of forum, such that transfer would serve 'the
convenience of parties and witnesses' and promote 'the interest
of justice.'"  Alice Peck Day Mem'l Hosp. v. Vermont Agency of
Hum. Servs., Sec'y, No. 20-CV-919-LM, 2021 WL 736146, at *2
(D.N.H. Feb. 25, 2021) (quoting 28 U.S.C. § 1404(a)).  But, when
the moving party seeks transfer pursuant to a mandatory forum
selection clause, the court's analysis, as well as the parties'
respective burdens, change.  "Where a Section 1404(a) motion is

filed to enforce a mandatory forum selection clause, the
plaintiff's choice of forum is afforded no weight, the private-
interest factors are deemed to weigh 'entirely in favor' of
transfer, and it is the opposing party's burden to establish
that the public-interest factors 'overwhelmingly disfavor a
transfer.'  Id. (quoting Atl. Marine Constr. Co. v. U.S. Dist.
Ct. for W. Dist. Of Texas, 571 U.S. 49, 64, 67 (2013)).


**Discussion**

I.   Scope and Validity of the Parties' Contract.

        Wing asserts that his Offer Letter and the Employment
Agreement are distinct contracts and must be interpreted as
such.  And, because the Offer Letter – which contains the
conditional promise to give Wing shares in the company – has no
forum selection clause, he asserts that his breach of contract
and promissory estoppel claims may properly be brought in this
forum.  Moreover, says Wing, he was improperly induced and/or
pressured to sign the Employment Agreement and, therefore, even
if it does apply to his claims, it should not be enforced
against him.  See, e.g., Plaintiff's Surreply Memorandum
(document no. 19) at 2-3) (arguing that Clear Align unfairly
presented him with the forum selection clause only after it
induced him to resign from his former job and asserting that,
"Clear Align seeks to graft a forum selection clause from an

6

agreement it first presented to Mr. Wing after his employment
began onto an agreement containing no forum selection clause
that Mr. Wing and Clear Align fully executed, and that Mr. Wing
acted in reliance upon before Mr. Wing's employment began.").
The court disagrees.

Under both New Hampshire and Pennsylvania law, it is plain
that the Offer Letter and the Employment Agreement must be read
together and interpreted with reference to each other.  See
Cove-Craft Indus. Inc. v. B. L. Armstrong Co., 120 N.H. 195, 199
(1980); Bellak v. Franconia Coll., 118 N.H. 313, 314 (1978); see
also Sw. Energy Prod. Co. v. Forest Res., LLC, 2013 PA Super
307, 83 A.3d 177, 187 (2013); Trombetta v. Raymond James Fin.
Servs., Inc., 2006 PA Super 229, 907 A.2d 550, 560 (2006).  Each
document references the other, they were executed within 30 days
of each other, and both address the benefits, terms, and
conditions of Wing's employment.  They must, then, be read and
interpreted as a whole.  See Steinke v. Sunguard Fin. Sys., 121
F.3d 763, 770-71 & 771 n.5 (1st Cir. 1997) (applying
Pennsylvania law and concluding that the parties' offer letter
and employment agreement constitute an integrated agreement).

That means, of course, that the choice of law and forum selection clause of the Employment Agreement governs claims that "relate to" both the Offer Letter and the Employment Agreement. But, says Wing, the forum selection clause is unenforceable against him on grounds that he detrimentally relied on the absence of any such agreement when he accepted Clear Align's job offer and/or because enforcement of that provision would be unfair or unjust.  He has, however, failed to make such a showing.

As the Court of Appeals for the First Circuit has noted, "The Supreme Court has identified four possible grounds for finding a forum selection clause unenforceable: (1) the clause was the product of fraud or overreaching; (2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc., 997 F.3d 367, 375 (1st Cir. 2021) (citations and internal punctuation omitted).  Here, there is no suggestion that Clear Align misled Wing about the forum selection clause or that its inclusion in

the Employment Agreement was the product of fraud or undue
influence.  Nor does Wing claim that when presented with the
Employment Agreement, he asked Clear Align to remove the forum
selection clause or that he sought to negotiate alternate terms.
Rather, it seems that Wing accepted those terms and executed the
agreement as presented, thus evidencing the parties' meeting of
the minds and Wing's willingness to be bound by the terms of the
contract.  See, e.g., Outside Television, Inc. v. Murin, 977 F.
Supp. 2d 1, 14 (D. Me. 2013) ("Although [plaintiff] did not
negotiate the agreement and it was generic, he was not told that
the agreement was non-negotiable.  All that can be said is that
[plaintiff] made no attempt to negotiate terms with his new
employer.  He has not established any fraud or undue
influence.").  Nor has Wing demonstrated that enforcement of the
forum selection clause would be unreasonable and unjust, or that
it would be unduly burdensome for him to litigate his claims in
a Pennsylvania forum.  See Id. ("Although it will certainly be
inconvenient and expensive for [plaintiff] and his witnesses to
travel to Maine, [plaintiff] has not established that it would
be so 'gravely difficult and inconvenient' that he will be
deprived of his day in court.") (quoting M/S Bremen v. Zapata
Off-Shore Co., 407 U.S. 1, 18 (1972)).  Finally, Wing has not
shown that any public policy would be offended by the
enforcement of the forum selection clause.  In short, he has

failed to demonstrate that any of the relevant factors
identified by the Supreme Court counsels in favor of
invalidating the forum selection clause.

II.   The Forum Selection Clause is Mandatory.

"Under federal law, the threshold question in interpreting
a forum selection clause is whether the clause at issue is
permissive or mandatory.  Permissive forum selection clauses,
often described as 'consent to jurisdiction' clauses, authorize
jurisdiction and venue in a designated forum, but do not
prohibit litigation elsewhere.  In contrast, mandatory forum
selection clauses contain clear language indicating that
jurisdiction and venue are appropriate exclusively in the
designated forum."  Rivera v. Centro Medico de Turabo, Inc., 575
F.3d 10, 17 (1st Cir. 2009) (citation and internal punctuation
omitted).

Here, the forum selection clause in the parties' agreement
provides that, "Employer and Employee submit and consent to the
exclusive jurisdiction of the state and federal courts located
in the State of Pennsylvania, Counties of Philadelphia or
Delaware or Montgomery or Chester with respect to any legal
actions between them relating to this Agreement."  Employment
Agreement at § 9 (emphasis supplied).  That language is

10

undeniably "mandatory" and provides that the parties have agreed

to the "exclusive jurisdiction" of the state and federal courts

in the Commonwealth of Pennsylvania, meaning that any disputes

"relating to" their agreement must be brought in that forum.

See generally Autoridad de Energia Electrica de Puerto Rico v.

Vitol S.A., 859 F.3d 140, 146 (1st Cir. 2017); Alice Peck Day

Mem'l Hosp., 2021 WL 736146, at *3.


III. The Forum Selection Clause Governs Claims in this Action.

    Having resolved that the Offer Letter and Employment

Agreement must be read together as an integrated whole, and that

the forum selection clause is both enforceable and mandatory,

the court can quickly resolve the final element of its inquiry:

the forum selection clause applies to all claims raised in

Wing's complaint.  As this court (McCafferty, C.J.) recently

noted:

        It is the language of the forum selection clause
        itself that determines which claims fall within its
        scope.  Here, the forum selection clause covers
        disputes that are "in any way related to"
        [plaintiff's] Employment Agreement.  The First Circuit
        has interpreted the phrase "related to" in forum
        selection clauses to be very broad in scope.  The
        phrase "related to" is synonymous with other embracing
        language, such as "with respect to," "in connection
        with," and "associated with."  The First Circuit has
        explained that these phrases are broader in scope than
        the term "arising out of" and broader than the concept
        of a causal connection.  Claims are "related to" an
        agreement if they are "connected by reason of an

11

established or discoverable relation."  Thus, claims
may be "related to" a particular agreement although
they seek to enforce rights that do not arise directly
out of the agreement.

Cameron v. X-Ray Pro. Ass'n, No. 16-CV-343-LM, 2017 WL 680388,
at *2-3 (D.N.H. Feb. 21, 2017) (citations and internal
punctuation omitted); see also Autoridad de Energia Electrica de
Puerto Rico v. Vitol Inc., No. 09-CV-2242-SJM, 2016 WL 9443738
at *5-6 (D.P.R. Mar. 16, 2016) (discussing the broad
interpretation given to phrases like "with respect to," "in
regard to" and "relating to" when interpreting forum selection
clauses).  See generally Huffington v. T.C. Grp., LLC, 637 F.3d
18, 23 (1st Cir. 2011) ("Forum selection clauses using embracing
language [i.e., "with respect to" or "relating to," or "in
connection with"] are common and have usually been construed
broadly.  Courts have often contrasted this language with
narrower language - e.g., "to enforce," "to construe" - that
could easily have been employed if a narrower focus were
intended.") (footnote omitted); Coregis Ins. Co. v. Am. Health
Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (noting that
the phrase "relating to" has a broad definition and "is not
necessarily tied to the concept of a causal connection").

     Wing's breach of contract and promissory estoppel claims
(concerning to the company stock conditionally promised to him)

undeniably "relate" to the Employment Agreement since those
claims are based on the language of the agreement itself.  And,
while the forum selection clause could have been written more
clearly and explicitly, that clause also governs Wing's sexual
harassment and retaliation claims because they "relate to" his
employment with Clear Align.  See, e.g., Cameron, 2017 WL
680388, at *3 (D.N.H. Feb. 21, 2017) ("Cameron argues that his
claims are not subject to the forum selection clause because
they exist independent of the Employment Agreement and do not
require reading or interpreting any language in the agreement to
determine defendants' liability.  Cameron's argument might be
persuasive if the forum selection clause used a narrower phrase,
such as "enforce rights under," "arise under," or "derive from"
this agreement, rather than the broad phrase "in any way related
to" this agreement.  While Cameron's claims do not directly
invoke any rights or provisions in the Employment Agreement, the
broad forum selection clause in this case encompasses claims
that are factually connected to Cameron's employment
relationship evidenced by the Employment Agreement.") (emphasis
supplied); see also Sherlock v. Lifestyle Hearing Corp. (USA),
Inc., No. CV 19-743, 2019 WL 5102231, at *4 (E.D. Pa. Oct. 10,
2019) (concluding that a forum selection clause governing all
claims "arising out of or relating to this agreement" applied to
plaintiff's Title VII wrongful termination claim because that

claim "has some 'logical or causal connection' to the employment agreement").

## Conclusion

Clear Align has established that Wing's Offer Letter and his Employment Contract must be interpreted as a single, integrated contract.  It has also shown that Wing's claims are subject to the mandatory forum selection clause contained in that contract.  In response, Wing has not demonstrated that the forum selection clause is unenforceable against him.  So, for the foregoing reasons, as well as those set forth in Clear Align's legal memoranda (documents no. 10-1 and 18), Clear Align's Motion to Dismiss, or Alternatively to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (**document no. 10**) is granted in part and denied in part.  It is granted to the extent Clear Align seeks a transfer to the United States District Court for the Eastern District of Pennsylvania.  In all other respects, that motion is denied.

The Clerk of Court shall transfer this matter to the United States District Court for the Eastern District of Pennsylvania and close the case on this court's docket.

14

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

August 11, 2021

cc:   Benjamin T. King, Esq.
      Debra Weiss Ford, Esq.
      Samuel H. Martin, Esq.